IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY KENDRICK<br>2269 Rosewood Ave<br>Toledo, OH 43606 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES**<br>**AND REINSTATEMENT** |
| STATE OF OHIO<br>Department Of Rehabilitation & Correction<br>Correctional Reception Center<br>11271 State Route 762<br>Orient, OH 43146 | )<br>)<br>)<br>)<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| And | ) | |
| JOHN MORRISEY<br>c/o Ohio Department of Rehabilitation &<br>Correction Correctional Reception Center<br>11271 State Route 762<br>Orient, OH 43146 | )<br>)<br>)<br>)<br>) | |
| And | ) | |
| LIEUTENANT JONES<br>c/o Ohio Department of Rehabilitation &<br>Correction Correctional Reception Center<br>11271 State Route 762<br>Orient, OH 43146 | )<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

Plaintiff, Kimberly Kendrick, by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

**PARTIES, JURISDICTION & VENUE**

1. Kimberly Kendrick is a resident of the city of Toledo, Lucas County, Ohio.

2. Kendrick was a correctional officer for the Ohio Department of Rehabilitation and Corrections ("ODRC").

3. ODRC is an agency of the state of Ohio.

4. ODRC is an employer within the meaning of 42 U.S.C. § 2000e.

5. Ohio Department of Rehabilitation and Corrections ("ODRC") is a state agency with a facility located at 11271 State Route 762, Orient, Pickaway County, OH 43146.

6. Upon information and belief, John Morrisey is a resident of the state of Ohio.

7. At all times material herein, Morrisey was acting under color of Ohio statute, ordinance, regulation, custom, or usage.

8. Upon information and belief, Lieutenant Jones is a resident of the state of Ohio.

9. At all times material herein, Jones was acting under color of Ohio statute, ordinance, regulation, custom, or usage.

10. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Kendrick is alleging Federal Law Claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e; and 42 U.S.C. § 1983.

11. This Court has supplemental jurisdiction over Kendrick's state law claims pursuant to 28 U.S.C. § 1367 as Kendrick's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

12. All material events alleged in this Complaint occurred in Pickaway County.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

14. Within 300 days of the conduct alleged below, Kendrick filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2020-02009 against ODRC.

15. On or about July 9, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Kendrick regarding the Charges of Discrimination brought by Kendrick against ODRC in EEOC Agency Charge No. 532-2020-02009.

16. Kendrick received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

17. Kendrick has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

18. Kendrick has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

19. On or around January 22, 2018, Kendrick began working for ODRC.

20. Kendrick is female.

21. Kendrick worked for ODRC as a corrections officer.

22. At all times material herein, John Morrisey was employed at ODRC.

23. Morrisey is male.

24. Morrisey did not participate in the decision to hire Kendrick.

25. Morrisey worked as a case manager at ODRC.

26. Kendrick was assigned to work under Morrisey's supervision.

27. In or around June 2020, Kendrick met with Morrisey in Morrisey's office.

28. In or around June 2020, as Kendrick tried to exit Morrisey's office at the conclusion of their meeting, Morrisey blocked the door with his body. ("Morrisey's First Sexual Harassment")

29. During Morrisey's First Sexual Harassment, Morrisey grabbed Kendrick by both her arm and her waist and began to pull her toward him.

30. During Morrisey's First Sexual Harassment, Kendrick extended her arms in an attempt to put physical distance between herself and Morrisey, breaking his grasp.

31. Morrisey did not have Kendrick's consent to touch her.

32. During Morrisey's First Sexual Harassment, Kendrick abruptly told Morrisey, "You better stop!" (Kendrick's Opposition to Morrisey's First Sexual Harrassment)

33. Immediately following Morrisey's First Sexual Harassment, Kendrick sidestepped Morrisey and exited his office.

34. Morrisey's First Sexual Harassment was offensive to Kendrick.

35. Morrisey's First Sexual Harassment was unwelcome to Kendrick.

36. Morrisey's First Sexual Harassment was embarrassing to Kendrick.

37. Kendrick rejected Morrisey's First Sexual Harassment.

38. The same day as Morrisey's First Sexual Harassment, Kendrick was required to return to Morrisey's office to complete one of her assigned duties.

39. During Kendrick's second visit to Morrisey's office on the day of Morrisey's First Sexual Harassment, Morrisey again initiated unwanted physical contact with Kendrick. ("Morrisey's Second Sexual Harassment")

40. During Morrisey's Second Sexual Harassment, Morrisey again placed his hands on Kendrick's arm and waist and pulled her toward him, as if in a romantic embrace.

41. During Morrisey's Second Sexual Harassment, Kendrick told Morrisey to stop.

42. Kendrick opposed Morrisey's Second Sexual Harassment.

43. During Morrisey's Second Sexual Harassment, Kendrick reminded Morrisey, while still in his unwanted embrace, that his actions would be recorded by the surveillance cameras in ODRC's facility.

44. During Morrisey's Second Sexual Harassment, Morrisey continued to hold Kendrick against her will and informed her that the surveillance cameras that would have recorded his actions were broken.

45. During Morrisey's Second Sexual Harassment, Morrisey expressed his frustration with Kendrick's refusal of his undesired advances and asked Kendrick why she was being mean to him.

46. By asking Kendrick why she was "being mean to him," Morrisey attempted to shame Kendrick for her rejection of his repeated, unwanted sexual attention.

47. During Morrisey's Second Sexual Harassment, Morrisey told Kendrick to give him "some of that big ole' chocolate booty."

48. In response to Morrisey's Second Sexual Harassment, Kendrick removed herself from Morrisey's grasp and immediately exited his office.

49. Immediately following Morrisey's Second Sexual Harassment, Kendrick resolved to avoid returning to Morrisey's office.

50. During Morrisey's Second Sexual Harassment, Morrisey did not have Kendrick's consent to touch her.

51. Morrisey's Second Sexual Harassment was offensive to Kendrick.

52. Morrisey's Second Sexual Harassment was embarrassing to Kendrick.

53. Morrisey's Second Sexual Harassment was unwelcome to Kendrick.

54. Kendrick rejected Morrisey's Second Sexual Harassment.

55. Morrisey's Second Sexual Harassment caused Kendrick to become severely emotionally distraught.

56. Immediately after Morrisey's Second Sexual Harassment, Kendrick was so upset that she became physically ill.

57. In or around June 3, 2020, Kendrick disclosed to Bonner and Morgan the details of Morrisey's First and Second Sexual Harassments.

58. In or around June 2020, upon hearing Kendrick's recount of Morrisey's First and Second Sexual Harassments, two other female officers at ODRC informed Kendrick that Morrisey had also sexually harassed them on separate occasions.

59. On or around June 5, 2020, Kendrick and several other officers from ODRC went for a social drink after work.

60. At all times material herein, Lieutenant Jones was an employee at ODRC.

61. At all times material herein, Lieutenant Jones was employed as a supervising officer at ODRC.

62. Jones is male.

63. At all times material herein, Anderson was employed as a correctional officer at ODRC.

64. Anderson is male.

65. At all times material herein, Morgan was employed as a correctional officer at ODRC.

66. Morgan is female.

67. At all times material herein, Bonner was employed as a correctional officer at ODRC.

68. Bonner is female.

69. On or around June 5, 2020, Lieutenant Jones accompanied Kendrick, Morgan, Anderson, and Bonner for a social drink after work.

70. On or around June 5, 2020, Kendrick recounted the details of Morrisey's First and Second Sexual Harassments to Jones, Morgan, Anderson, and Bonner.

71. On or around June 5, 2020, Jones dismissed Kendrick's complaint of sexual harassment, saying that Kendrick was merely "drunk talking."

72. Kendrick was not drunk when she recounted the details of Morrisey's First and Second Sexual Harassments to Jones, Morgan, Anderson, and Bonner.

73. On or around June 5, 2020, Jones accused Kendrick of lying about Morrisey's First and Second Sexual Harassments.

74. Jones dismissed Kendrick's claims of sexual harassment on the basis of her gender.

75. Jones accused Kendrick of lying about Morrisey's First and Second Sexual Harassments because of her gender.

76. On or around June 5, 2020, Morgan and Bonner informed Jones that Kendrick was not lying about Morrisey's sexual harassment.

77. On or around June 5, 2020, Jones failed to investigate Kendrick's complaint of sexual harassment.

78. On or around June 5, 2020, Jones failed to take any remedial action in response to Kendrick's complaint of sexual harassment.

79. On or around June 8, 2020, Kendrick filed a written sexual harassment report with ODRC.

80. In her sexual harassment report, Kendrick detailed Morrisey's multiple instances of physical contact and inappropriate sexual comments.

81. On or around June 8, 2020, Morrisey learned of Kendrick's sexual harassment report.

82. On or around June 8, 2020, Morrisey was prohibited from discussing Kendrick's sexual harassment report with Kendrick.

83. On or around June 8, 2020, Morrisey sent a text message to Kendrick about her sexual harassment report.

84. On or around June 8, 2020, Kendrick complained to ODRC human resources that Morrisey was making prohibited contact pursuant to her report of sexual harassment.

85. On or around June 8, 2020, ODRC failed to take corrective action in response to Kendrick's complaint of sexual harassment.

86. On or around June 8, 2020, ODRC failed to take corrective action in response to Kendrick's complaint of Morrisey privately contacting her regarding her report of sexual harassment.

87. Based on ODRC's policies, Kendrick's Discrimination Complaints were considered to be significant workplace incidents.

88. Defendants have a policy and practice of fully investigating significant workplace incidents.

89. Defendants have a policy and practice of getting written statements from all participants to significant workplace incidents.

90. Defendants have a policy and practice of getting written statements from all witnesses to significant workplace incidents.

91. Defendants violated their policy and practice of fully investigating significant workplace incidents regarding Kendrick's Discrimination Complaints.

92. Defendants violated their policy and practice of getting written statements from all participants to significant workplace incidents regarding Kendrick's Discrimination Complaints.

93. Defendants violated their policy and practice of getting written statements from all witnesses to significant workplace incidents regarding Kendrick's Discrimination Complaints.

94. Defendants' failure to follow their policy and practice of fully investigating significant workplace incidents was an adverse action against Kendrick.

95. Defendants' failure to follow their policy and practice of getting written statements from all participants to significant workplace incidents was an adverse action against Kendrick.

96. Defendants' failure to follow their policy and practice of getting written statements from all witnesses to significant workplace incidents was an adverse action against Kendrick.

97. Correctional Reception Center disregarded Kendrick's Discrimination Complaints and failed to take any action with respect to Morrisey's sexual harassment.

98. Morrisey was not given a verbal warning as a result of his discriminatory remarks to Kendrick.

99. Morrisey was not given a written warning as a result of his discriminatory remarks to Kendrick.

100. Morrisey's employment at ODRC was not suspended as a result of his discriminatory remarks to Kendrick.

101. Morrisey's employment at ODRC was not terminated as a result of his discriminatory remarks to Kendrick.

102. ODRC failed to separate Kendrick and Morrisey following Kendrick's sexual harassment complaint.

103. ODRC failed to take any remedial measure regarding Morrisey's sexual harassment of Kendrick.

104. ODRC forced Kendrick to continue working under Morrisey's supervision following her complaints of sexual harassment.

105. No ODRC employee could reasonably be expected to satisfactorily work in an environment subject to sexual harassment by their supervisor.

106. Morrisey's pervasive sexual harassment created circumstances so severe that any reasonable person in the circumstances would have been compelled to resign.

107. On or about July 20, 2020, Kendrick was forced to resign from ODRC.

108. Upon information and belief, ODRC permitted similarly-situated employees who had not complained of sexual harassment to retain their employment.

109. As a result of being constantly harassed and insulted on the basis of sex during her employment at ODRC, and being constructively discharged from ODRC, Kendrick has suffered severe emotional distress, anxiety, and depression.

110. The above facts demonstrate that Defendants engaged in a pattern and practice of sexual harassment.

111. The above facts demonstrate that Defendants engaged in a pattern and practice of unlawful retaliation.

112. There was a causal connection between Kendrick's race and Defendants' termination of Kendrick.

113. There was a causal connection between Kendrick's Disability Discrimination Complaint and Defendants' termination of Kendrick.

### COUNT I:  DISCRIMINATION AND HARASSMENT ON THE BASIS OF SEX IN VIOLATION OF TITLE VII

**(Defendant State of Ohio)**

114. Kendrick restates each and every paragraph of this Complaint as though it were fully restated herein.

115. Kendrick is a member of a statutorily protected class based on her gender under Title VII.

116. Defendant treated Kendrick differently than other similarly-situated employees based on her gender.

117. Defendant discriminated against Kendrick on the basis of her gender throughout her employment.

118. ODRC's discrimination against Kendrick based on her gender violates Title VII.

119. Kendrick was subjected to unwelcome sexual harassment in the form of sexual comments, inappropriate sexual gestures, and sexual advances.

120. Defendant created and sustained an environment of severe and pervasive sexual harassment in the form of unwelcome sexual comments, inappropriate sexual gestures, and sexual advances.

121. As a direct and proximate result of the intimidating, offensive, and hostile environment created and sustained by Defendants, Kendrick repeatedly reported the sexual harassment to her supervisor both verbally and in writing.

122. Defendant's actions amount to discrimination on the basis of sex through the creation of a hostile work environment in violation of Title VII.

123. Morrisey's sexual harassment of Kendrick occurred while he was acting in the course and scope of his employment.

124. Kendrick's supervisor had knowledge of Correctional Reception Center's sexual harassment and failed to take any corrective or remedial action.

125. Kendrick suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to Title VII.

126. As a direct and proximate result of Defendants' conduct, Kendrick has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT II: RETALIATION IN VIOLATION OF TITLE VII

**(Defendant State of Ohio)**

127. Kendrick restates each and every prior paragraph of this complaint, as if it were fully restated herein.

128. As a result of the Defendant's discriminatory conduct described above, Kendrick complained about the sexual harassment she was experiencing.

129. Subsequent to Kendrick reporting of sexual harassment to her supervisor and employer Kendrick's workstation was not relocated nor was she allowed to work apart from her harasser.

130. Subsequent to Kendrick filing a sexual harassment complaint against Morrisey, Morrisey was permitted to contact Kendrick privately.

131. Subsequent to Kendrick filing a sexual harassment complaint, ODRC took no steps to protect Kendrick from further sexual harassment.

132. Subsequent to Kendrick filing a sexual harassment complaint, ODRC constructively discharged Kendrick from her employment with ODRC.

133. Defendant's actions were retaliatory in nature based on Kendrick 's opposition to the unlawful discriminatory conduct.

## COUNT III: GENDER DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1983

**(Against Defendants Jones and Morrisey)**

134. Kendrick restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

135. The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution prohibits discrimination on the basis of gender.

136. ODRC is an agency of the state of Ohio.

137. ODRC employs Jones as a lieutenant.

138. At all times herein, Jones was acting in the scope of his employment.

139. At all times herein, Jones acted under color of Ohio statute, ordinance, regulation, custom, or usage.

140. ODRC employs Morrisey as a case manager.

141. Morrisey discriminated against Kendrick on the basis of her gender.

142. At all times herein, Morrisey was acting in the scope of his employment.

143. At all times herein, Morrisey acted under color of Ohio statute, ordinance, regulation, custom, or usage.

144. Morrisey discriminated against Kendrick on the basis of her gender.

145. By discriminating against Kendrick on the basis of her gender, Defendants deprived Kendrick of her rights, privileges, or immunities under Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

**DEMAND FOR RELIEF**

WHEREFORE, Kendrick demands from Defendants the following:

(a) Issue an order requiring ODRC to restore Kendrick to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Kendrick for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Kendrick's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

        Respectfully submitted,

*/s/ Trisha Breedlove*_____
Trisha Breedlove (0095852)
Gregory T. Shumaker (0095552)
**The Spitz Law Firm, LLC**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
Email: greg.shumaker@spitzlawfirm.com

*Attorneys For Plaintiff*

## JURY DEMAND

Plaintiff Kimberly Kendrick demands a trial by jury by the maximum number of jurors permitted.

>  */s/ Trisha Breedlove*
>  Trisha Breedlove (0095852)
>  Gregory T. Shumaker (0095552)
>  **THE SPITZ LAW FIRM, LLC**